1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:15-cr-00071-JAD-GWF |
| | ) | |
| vs. | ) | **FINDINGS &** |
| | ) | **RECOMMENDATIONS** |
| | ) | |
| | ) | **Re:  Motion to Dismiss (ECF No. 130)** |
| ROBERT DEVELL KINCADE,** | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on Defendant Robert Devell Kincade's Motion to Dismiss for Prosecutorial Delay and Misconduct (ECF No. 130), filed on October 3, 2016.  The Government filed its Response (ECF No. 163) on October 20, 2016 and the Defendant filed his Reply (ECF No. 186) on November 11, 2016.  The Court conducted an evidentiary hearing in this matter on November 23, 2016.

## BACKGROUND

1.   <u>Facts Relating to Alleged Violation of Defendant's Sixth Amendment Right to a Speedy Trial</u>.

Defendant Kincade's defense counsel, Kathleen Bliss, was an Assistant United States Attorney in the District of Nevada in 2010–2012.  In October 2011, Defendant Kincade, a convicted felon on supervised release, was accused of committing a September 12, 2011 robbery of the City National Bank in Las Vegas, Nevada.  Ms. Bliss requested that the matter be assigned to her for purposes of prosecuting a petition for violation of conditions of supervised release against Mr. Kincade, and possibly filing a criminal complaint against him for the robbery.  A petition for violation of supervised release was filed against Defendant Kincade in October 2011, and Ms. Bliss

represented the Government on that petition.  Ms. Bliss subsequently informed the District Court in May and June 2012, however, that the Government had determined that Defendant Kincade did not commit the robbery.  The petition to revoke his supervised release was amended to eliminate the robbery as an alleged violation.  Defendant Kincade was instead charged with violating his supervised release by committing malicious destruction of property and domestic battery.  Ms. Bliss left the United States Attorney's office and entered private law practice prior to November 2014 when Defendant Kincade allegedly committed two other robberies.  As discussed herein, Defendant Kincade subsequently retained Ms. Bliss to defend him on the November 2014 robbery charges.

The original indictment, filed on March 11, 2015, charged Defendants Kincade and Jose Rogli Florez with the robbery of the IBEW Credit Union in Las Vegas on November 14, 2014. *Indictment (ECF No. 10)*.  Defendant Florez was arraigned on the indictment on March 18, 2015, at which time trial was set for May 12, 2015.  *Minutes of Proceedings (ECF No. 15)*.  Defendant Kincade made his initial appearance and was arraigned on the indictment on April 10, 2015. Attorney Osvaldo Fumo was appointed to represent him.  *Minutes of Proceedings (ECF No. 18)*.  On April 30, 2015, the parties filed their first stipulation to continue the pretrial motion deadlines and trial date.  *Stipulation to Continue (ECF No. 25)*.  The stipulation stated that Defendants were in custody, but did not oppose the continuance which was sought "to allow counsels for defendants sufficient time to complete necessary research, prepare and submit appropriate pretrial motions." *Id.* at pg. 2.  The Court granted the requested continuance on April 30, 2015 and scheduled trial for August 11, 2015.  *Order (ECF No. 26)*.[1]

On July 10, 2015, Defendant Kincade filed a motion to dismiss Mr. Fumo as his counsel. *Motion to Dismiss (ECF No. 30)*.  During the July 21, 2015 hearing on this motion, the Court advised Defendant Kincade that the appointment of new counsel would require a further continuance of the trial.  Defendant agreed to a continuance and the Court granted his motion.  *Minutes of Proceedings (ECF No. 32)*.  On July 22, 2015, the first superceding indictment was filed which

---

[1] Each stipulation to continue the trial date was accompanied by proposed findings of fact, conclusions of law and an order which repeated the reasons set forth in the stipulation to justify the continuance and the exclusion of time under the Speedy Trial Act, 18 U.S.C. § 3161(h).

1   added a second robbery charge against Defendants Kincade and Florez for the robbery of the Wells

2   Fargo Bank in Reno, Nevada on November 25, 2014.  *Superceding Indictment (ECF No. 35)*.  On

3   July 22, 2015, attorney Jennifer Waldo was appointed to represent Mr. Kincade.  *Order (ECF No.*

4   *34)*.  On July 28, 2015, the parties filed the second stipulation to continue the motion deadlines and

5   the August 11, 2015 trial date.  *Stipulation to Continue (ECF No. 41)*.  The stipulation stated that as

6   a result of the first superceding indictment, Defendants' counsel "need time in order to consult with

7   defendants and review records relating to the additional charges."  *Id.* at pg. 2.  It also stated that Ms.

8   Waldo "need[ed] additional time to effectively and thoroughly investigate the case."  *Id.*  The Court

9   granted the requested continuance on July 29, 2015 and scheduled trial for November 3, 2015.

10   *Order (ECF No. 42)*.

11        On September 1, 2015, attorney Kathleen Bliss filed a designation of retained counsel and

12   appearance praecipe on behalf of Defendant Kincade.  *Designation of Retained Counsel (ECF No.*

13   *45)*.  The Court entered a minute order on September 24, 2015 stating that "if Defendant Kincade

14   wishes to replace CJA counsel Jennifer Waldo, the parties should file a Substitution of Attorneys."

15   *Minute Order (ECF No. 47)*.  A substitution of attorneys was thereafter filed on October 2, 2015 and

16   approved by the Court on October 5, 2015.  *Motion to Substitute Attorney (ECF No. 48); Order*

17   *(ECF No. 50)*.  On October 5, 2015, the parties filed the third stipulation to continue the trial date.

18   *Stipulation to Continue (ECF No. 49)*.  The stipulation stated that Ms. Bliss needed time to review

19   all discovery.  It also stated that counsel for the government would soon be going on medical leave.

20   *Id.* at pg. 1. The Court granted the requested continuance on October 5, 2015 and scheduled trial for

21   February 9, 2016.  *Order (ECF No. 51)*.

22        On October 6, 2015, Defendant Kincade filed a stipulated motion to extend the pretrial

23   motions deadline.  *Motion (ECF No. 52)*.  The Court set January 4, 2016 as the new pretrial motions

24   deadline.  *Order (ECF No. 53)*.  Defendant Kincade thereafter filed motions to compel (1) the

25   preservation and production of government officers' notes; (2) the production of exculpatory grand

26   jury transcript evidence; and (3) the production of exculpatory physical and forensic evidence.

27   *Motions (ECF Nos. 56, 57, 58)*.  The Court entered orders on these motions on December 31, 2015,

28   January 4, 2016, and January 7, 2016.  *Orders (ECF Nos. 69, 70, 71)*.  On January 20, 2016, the

parties filed the fourth stipulation to continue the trial date. *Stipulation to Continue (ECF No. 74)*. The stipulation stated that Defendant Kincade would be filing a motion for reconsideration of the magistrate judge's order denying production of grand jury transcripts. The stipulation also stated that the Government's counsel had two trials scheduled in March and therefore needed a 60 day continuance of the trial date. *Id.* at pgs. 1–2. On January 21, 2016, the Court granted the requested continuance and scheduled trial for April 19, 2016. *Order (ECF No. 76)*.[2]

On March 31, 2016, the parties filed the fifth stipulation to continue the trial date. *Stipulation to Continue (ECF No. 86)*. The stipulation stated that Defendant Kincade's counsel had a May 16, 2016 trial in another case which involved complex financial transactions and required extensive trial preparation. The stipulation also stated that the Government's counsel had three other trials set to go the same week as the trial in this case. The stipulation also stated that Defendants had received additional discovery since the previous continuance and needed more time to review the discovery, identify and interview witnesses and obtain subpoenaed materials. *Id.* at pgs. 1–2. The Court granted the requested continuance and scheduled trial for July 12, 2016. *Order (ECF No. 87)*.

On June 1, 2016, the Government's counsel, Alexandra Michael, sent an email to Defendants' attorneys stating that she was "set to be on a pre-scheduled vacation at the time this case is set for trial. My understanding is that it is expected to go to trial so I was wondering if you both, and your clients, would agree to a stip to reschedule CC and trial. I am scheduled to start a trial July 25 so I was going to propose the first or second week of August so as not to set it out too far. Please let me know when you get the chance." *Motion to Dismiss (ECF No. 130), Exhibit A*. Ms. Bliss responded by stating that there was certain discovery that she needed to obtain from the Government. She also stated that "Mr. Kincade is eager to go to trial, and in my last meeting with him, he stated that he does not want to waive Speedy Trial. I will have to approach it with him again. I will try to see him next week." *Id.* On June 6, 2016, Ms. Bliss sent an email to Ms. Michael and Defendant

---

[2] The Court also granted Defendant Kincade an extension of time until February 4, 2016 to file the motion for reconsideration. *Order (ECF No. 75)*. Instead of filing a motion, however, Defendant Kincade filed a notice of objection to the magistrate judge's order stating that he "hereby reserves his appellate rights with regards to the aforementioned order." *Notice of Objection (ECF No. 77)*.

Florez's attorney stating that Defendant Kincade "will not agree to waive Speedy Trial, so we will be ready to go July 12."  *Motion (ECF No. 130), Exhibit B.*

On June 14, 2016, Ms. Michael sent an email to Ms. Bliss, stating that she was responding to Ms. Bliss's letter dated June 1, 2016.  *Motion (ECF No. 130), Exhibit C.*  After addressing Defendant Kincade's discovery requests, Ms. Michael stated:

> However, a more pressing issue has arisen regarding a conflict with your representation of the defendant.  The government intends to supercede and add a charge against your client of bank robbery relating to an incident that occurred at City National Bank on September 12, 2011.  This new charge presents a conflict with your representation of the defendant based on your previous employment as an AUSA with the District of Nevada and more specifically you having been the AUSA who was assigned to handle Robert Kincade's case/supervised release revocation hearing . . . .  This situation implicates Nevada Rules of Professional Conduct: 1.11, 1.6, 1.7, 1.8, and 1.9.  This email is to serve as informal notice of the government's concerns regarding said conflict and if not resolved the government intends to file a motion to disqualify counsel with the court by the end of this week or early next week.

*Id.* at Exhibit C.

Ms. Bliss responded by email that day, inquiring: "Is the case you are charging him with the one that I declined for lack of evidence?  You need to give me more information so I can assess this and figure out why you are doing something like this on the eve of trial." *Motion (ECF No. 130), Exhibit D.*  Ms. Michael responded on June 15, 2016, stating that the charge to be added was the September 12, 2011 robbery.  She further stated:

> Additionally, I received DNA evidence regarding the September 12, 2011 bank robbery on June 6, 2016 and the government believes that presenting said additional information is also a basis for disqualification due to conflict.  I do not believe the timing of my notification would qualify as "on the eve of trial" as the new evidence, which has contributed to adding the additional bank robbery, was received last week.  I provided you this information as a courtesy, and out of due diligence given our regular communications about the status and progress of this case.

*Id.* at Exhibit D.

Ms. Bliss responded, as follows, on June 15, 2016:

> I am not going to withdraw based upon a threat that you may try to introduce evidence of an entirely unrelated case and based on a threat on the eve of trial that you might supercede.  You are violating his right to a speedy trial and I am deeply concerned about the timing.  File

5

1  your motion.  Should you supercede, I will move to dismiss it.  Or the
   court can appoint another attorney to do so or simply sever the case.
2  You should probably research prosecutorial misconduct.

3  *Id.* at Exhibit D.

4  The second superceding indictment was filed on June 29, 2016.  *Superceding Indictment*

5  *(ECF No. 90)*.  That same day, the Government filed a motion to disqualify Ms. Bliss.  *Sealed*

6  *Motion to Disqualify (ECF No. 94)*.  On July 6, 2016, the parties filed the sixth stipulation to

7  continue the trial date.  *Stipulation to Continue (ECF No. 102)*.  The stipulation stated that the

8  second superceding indictment was filed on June 29, 2016, adding the additional robbery charge

9  against Defendant Kincade.  The stipulation further stated that the Government continued to produce

10 discovery and had recently filed notices of expert witnesses and an intent to introduce evidence under

11 Rule 404(b), and that Defendant Kincade and his counsel required additional time to review the new

12 discovery and file motions relating to the Government's notices of expert witnesses and intent to

13 introduce evidence under Rule 404(b).  *Id.* at pg. 1.  The stipulation also stated that the

14 Government's motion to disqualify Ms. Bliss needed to be briefed and considered by the court, and

15 that the time frame for doing so rendered the current trial setting impracticable.  *Id. at pg. 2.*  The

16 Court granted the requested continuance and scheduled trial for August 23, 2016.  *Order (ECF No.*

17 *103)*.

18 On July 14, 2016, the Court granted a stipulation to continue the hearing on the motion to

19 disqualify so that Defendant could obtain documents needed to respond to the motion.  *Stipulation to*

20 *Extend Time (ECF No. 104); Order (ECF No. 106)*.  The hearing on the motion to disqualify was

21 subsequently rescheduled to August 23, 2016.  *Stipulation to Continue Hearing (ECF No. 108);*

22 *Order (ECF N0. 109)*.  On August 4, 2016, the parties filed the seventh stipulation to continue the

23 trial date.  *Stipulation to Continue (ECF No. 111)*.  The stipulation stated that the parties were in the

24 midst of briefing the motion to disqualify Ms. Bliss and that the hearing on the motion was

25 scheduled for the same day that trial was set to commence.  The stipulation also stated that the

26 Government had produced additional discovery in connection with the new charge which Defendant

27 Kincade's counsel needed time to review, to discuss with Defendant, and to locate and interview

28 witnesses.  It also stated that Defendant Kincade anticipated filing a motion to sever or dismiss the

6

new charge. *Id.* at pg. 2.  The Court granted the requested continuance on August 5, 2016 and scheduled trial for November 1, 2016. *Order (ECF No. 112)*.

At the hearing on August 23, 2016, the Court found that Ms. Bliss had a conflict of interest that disqualified her from representing Defendant Kincade on the September 12, 2011 robbery charge.  The Court reserved its decision on whether Ms. Bliss should be disqualified from representing Mr. Kincade on the November 2014 robbery charges pending the filing and decision of a motion to sever. *Minutes of Proceedings (ECF No. 15); Order (ECF No. 116)*.  Defendant Kincade filed his motion to sever on September 7, 2016. *Motion to Sever (ECF No. 118)*.  On September 19, 2016, the Court appointed attorney Todd Leventhal to represent Defendant Kincade on the September 12, 2011 robbery charge. *Minutes of Proceedings (ECF No. 120); Order (ECF No. 121)*.

Defendant Kincade filed his instant motion to dismiss for prosecutorial delay and misconduct on October 3, 2016.  During the October 14, 2016 hearing on Defendant's motion to sever, the Court and counsel discussed the status of the November 1, 2016 trial date.  Although Defendant Kincade's counsel recognized the need for a continuance in view of pending and anticipated pretrial motions, they declined to stipulate to a further continuance out of concern that it might be viewed as a waiver of Defendant's argument that his right to a speedy trial had been violated.  The Government did not oppose a further continuance of the trial date.  On October 21, 2016, the Court, on its own motion, continued the trial date to February 28, 2017 so that pending pretrial motions can be decided prior to trial. *Order (ECF No. 165)*.

On October 21, 2016, the Court granted Defendant's motion to sever trial of the September 12, 2011 robbery charge from the November 2014 robbery charges.  The Court also denied the Government's motion to disqualify Ms. Bliss from representing Defendant Kincade on the November 2014 robbery charges. *Order (ECF No. 167)*.  On October 27, 2016, Defendant Kincade, through attorney Todd Leventhal, filed a motion to dismiss the September 12, 2011 robbery charge on the grounds that the Government's pre-indictment delay violated his Fifth Amendment right to due process of law. *Motion to Dismiss (ECF No. 169)*.

Defendant Kincade has attached to his instant motion to dismiss a June 7, 2016 report by the

Las Vegas Metropolitan Police Department's Forensic Laboratory regarding DNA tests on four items allegedly associated with Defendant Kincade: (1) a pair of Adidas pants, (2) a black doo rag, (3) a black bandana with a white design, and (4) a BB gun.  A match was found between Robert Kincade's known DNA and the DNA on the Adidas pants.  No DNA match could be established on the other items. *Motion (ECF No. 130), Exhibit G.*  The Adidas pants were apparently taken from Mr. Kincade at the time of his arrest in October 2011 and he has never denied that those pants belonged to him.

The Government provided additional information regarding its decision to charge Defendant Kincade with the September 12, 2011 robbery in its response to Defendant Kincade's motion to dismiss filed on October 27, 2016. *Government's Response (ECF No. 203).*  The Government states that in October 2011 Defendant Kincade's former girlfriend, S.P., told law enforcement officers that Mr. Kincade had committed the September 12, 2011 robbery.  S.P. stated that on September 13, 2011, Kincade told her that he had robbed a bank on September 12, 2011.  On October 2, 2011, Kincade talked about robbing another bank and explained how the September 12, 2011 robbery was committed.  S.P. told the officers that the hooded sweatshirt and bandana that Kincade used in the robbery were located in a motor vehicle that she and Kincade jointly owned.  S.P. took the officers to where the vehicle was located, and provided them with the vehicle's keys and a signed consent to search the vehicle.  Upon searching the vehicle, the officers recovered a box of vinyl gloves, a black BB gun, a hooded sweatshirt, a black doo rag, a black t-shirt and a black bandana. *Government's Response (ECF No. 203), Exhibit 1.*

After Defendant Kincade was arrested in October, 2011, he allegedly called S.P. and implied that physical harm would come to her if she stuck to her story.  S.P. thereafter retracted the statement she gave to the officers on October 4, 2011. *Government's Response (ECF No. 203), Exhibit 2.*  In May 2016, while preparing for trial on July 12, 2016, law enforcement officers again made contact with S.P. who stated that everything in her October 4, 2011 statement was true.  The Government also located the victim teller from the September 2011 robbery.  Based on this information, the Government decided to charge Defendant Kincade with the September 12, 2011 robbery. *Government's Response (ECF No. 203), pgs. 5-6.*  The Government further states that it "proceeded

1   when it had the proper evidence to support the charge which was, in large part, based on locating and

2   obtaining S.P.'s statements in May 2016." *Id.* at pg. 8.  None of this information was provided to

3   Ms. Bliss in June 2016 when the Government informed her of its decision to charge Defendant with

4   the September 12, 2011 robbery and to seek her disqualification.  In a footnote, to its response to

5   Defendant's motion to dismiss the September 12, 2011 robbery charge, the Government states that

6   due to safety concerns for S.P. it did not wish to highlight this information in its June 2016

7   communication with Defendant's counsel.  *Id.* at pg. 8, n. 2.

8          **2.      Facts Relating to Government's Alleged Intrusion into Defendant's Attorney-Client Relationship.**

9

10          Defendant Kincade has been detained in the Nevada Southern Detention Center ("Detention

11   Center") in Pahrump, Nevada since his arrest in March 2015.  On November 12, 2015, the

12   Government served a trial subpoena on the Warden of the Detention Center for "recordings of all

13   telephone calls made by Robert Devell Kincade from March 25, 2015 to present." *Defendant's*

14   *Hearing Exhibit N.*  On August 19, 2016, the Government served a subpoena on the Warden for

15   "copies of all incoming and outgoing correspondence to and from Robert Devell Kincade."

16   *Defendant's Hearing Exhibit L.*  On June 27, 2016, the Government provided supplemental

17   discovery to the Defendant which included "a compact disc containing hundreds, if not thousands, of

18   recordings of telephone calls made by Kincade from the Nevada Southern Detention Center in

19   Pahrump, Nevada." *Motion (ECF No. 130), pg. 10.*  The recordings included some telephone calls

20   made by Mr. Kincade to his counsel, Ms. Bliss.  In addition, the Government subsequently produced

21   a copy of an envelope and a one page letter that Mr. Kincade addressed to Ms. Bliss's legal assistant.

22   *See Defendant's Hearing Exhibit K* (copy of envelope).

23          The Detention Center "Detainee Handbook," which is provided to detainees upon their

24   admission to the facility, states that "[t]here are telephones in each housing unit for detainee use.

25   Telephone conversations may be monitored and/or recorded for security reasons." *Defendant's*

26   *Hearing Exhibit A, pg. 27.*  The handbook further states: "Phone calls will be recorded with the

27   exception of legal calls." *Id.*  Until recently, the Detainee Handbook did not provide specific

28   instructions as to what detainees are required to do to prevent the recording of telephone calls with

their attorneys.  On October 27, 2016, the Detention Center conducted a "town hall" meeting in

which detainees were instructed that there are two ways to request that their legal calls not be

recorded.  First, detainees can call the Detention Center's telephone service provider and request that

calls to the attorney's telephone number not be recorded.  Second, detainees can complete a non-

recorded call form which can be obtained from the unit case manager or correctional counselor.  The

case manager or counselor will then enter the attorney telephone information into the phone system

so that it is not recorded.  *Defendant's Hearing Exhibit B.*  In October 2016, the Detention Center

also prepared an insert to be placed in the Detainee Handbook which states:

> **Non-Recorded Phone Calls:** All calls are subject to being recorded.
> If you do not want calls with your attorney to be recorded, you must
> request a NON RECORDED LEGAL CALL by completing the
> Attorney Verification form and submitting it to one of the Unit team
> members, These forms are available in the housing units.  Upon
> verification you will receive confirmation that the Attorneys phone
> number has been added to the Non recorded list.  Once you receive
> confirmation the calls with your attorney are no longer being recorded.
> If you fail to follow these steps, the calls will be recorded.  Public
> Defenders telephone numbers are automatically marked for non-
> recording.

*Defendant's Hearing Exhibit B.*

The Detainee Handbook contains the following provision regarding "legal mail."

> Legal mail is delivered within 24 hours of receipt in the mail room
> except on weekends and holidays.  Detainees have to sign for all legal
> mail, which verifies receipt.  All legal mail is opened in the presence
> of the detainee and inspected for contraband.  You must show staff
> your ID before legal mail is given to you.  Outgoing legal mail must be
> sealed and marked (date and initials) by Unit staff verifying it is legal
> mail.  Unit staff takes all legal mail directly to the mail room.  The
> address on legal mail MUST be a law office, lawyer, judge, or court to
> be considered legal mail.

*Defendant's Hearing Exhibit A, pg. 34.*

Alfred Zavala, the Detention Center's facility investigator, testified that he is responsible for

monitoring detainees' phone calls and mail.  He testified that the Detention Center does not actively

monitor detainee telephone calls.  Those calls are recorded, however.  When the Detention Center

receives a subpoena for the production of detainee telephone recordings, personnel under his

supervision download the requested recordings onto a compact disc and produce them in compliance

with the subpoena.  Detention Center personnel do not review the downloaded telephone calls for

1   privileged communications.  Mr. Zavala testified that if the telephone number of the detainee's

2   attorney is entered into the telephone system with instructions that calls to that number not be

3   recorded, the telephone system will automatically recognize the number and the calls will not be

4   recorded.  The fact that an attorney's telephone number is shown on the call list, does not mean that

5   calls to that number were recorded.  Mr. Zavala reviewed Detention Center records to determine if

6   Defendant Kincade ever requested that any telephone numbers be designated as his attorney's

7   telephone number.  There was no such designation.  Mr. Zavala also testified that there was no

8   record that Mr. Kincade's attorneys had requested that their telephone numbers be designated for

9   non-recording.  Mr. Zavala has not personally been involved in advising detainees about the

10  procedures for ensuring that telephone calls with counsel are not recorded.  He did not know whether

11  the Detention Center provides instructions to detainees' attorneys regarding necessary steps to ensure

12  that telephone calls with their clients are not recorded.

13          Mr. Zavala testified that in regard to outgoing "legal mail," the detainee presents the unsealed

14  mail to a unit manager, who inspects it to confirm that it is legal mail.  The unit manager then seals

15  the envelope and marks it as legal mail.  Legal mail is taken to the mail room where it is noted in the

16  mail log and sent out.  When the Detention Center responds to a subpoena for copies of a detainee's

17  incoming or outgoing correspondence, the documents produced should not contain a detainee's legal

18  mail.  Although Mr. Zavala's testimony was less than clear, it appears that the Detention Center

19  makes copies of incoming and outgoing mail which it can thereafter produce in response to a

20  subpoena.  Legal mail, if properly handled, is not copied and therefore cannot be produced in

21  response to a subpoena.  Mr. Zavala testified that he looked at a copy of the envelope that was

22  addressed to Ms. Bliss's paralegal.  *Defendant's Hearing Exhibit K.*  He testified that the envelope

23  was not marked as legal mail.  Mr. Zavala testified that if a detainee places a letter to his attorney's

24  office in the regular mail drop box, it will not be marked or treated as legal mail.

25          Anthony Brandel, who is also represented by Ms. Bliss, testified that he has been detained at

26  the Detention Center since December 2015.  The Detention Center did not provide him with any

27  instructions regarding the recording of telephone calls with his attorney, beyond what was stated in

28  the Detainee Handbook.  He was told by another detainee that if he was going to make telephone

calls to an attorney, he should let the unit manager know.  Mr. Brandel spoke to the unit manager who gave him a form to fill out listing his attorneys' telephone numbers.  Mr. Brandel listed Ms. Bliss's telephone numbers on the completed form that he returned to the unit manager.  Mr. Brandel became concerned about the possible recording of his attorney telephone calls after he read a news account about this case.  He called the telephone service provider and asked if the recording of telephone calls to his attorney' phone numbers had been "turned-off."  The provider told him that the recording of calls to those numbers were not "turned off."  Mr. Brandel testified that notices were recently posted by the telephones stating that detainees need to complete the non-recording form and provide it to their unit manager if they do not want their attorney telephone calls to be recorded.  Mr. Brandel testified that at the time he received his first letter from Ms. Bliss, he was informed that legal mail is to be opened in the presence of the detainee.  He was also informed that if he wanted to send mail to an attorney, he had to take it to a unit manager who would sign off on it and seal the envelope.

Defendant Kincade testified that when he entered the Detention Center in March 2015, he was not provided with any information about the policy regarding legal calls.  He just thought that legal calls were not recorded.  He learned in July or August 2016, however, that recordings of telephone calls with his attorney had been turned over to the Government.  He was not informed by the Detention Center at any time between March 2015 and August 2016 of any steps he should take to ensure that his attorney telephone calls were not recorded.  His understanding with respect to legal mail is that it just needs to be addressed to a law office.  There was no consistent policy that required that legal mail be provided to a unit manager and verified as legal mail before it goes out.  Mr. Kincade has, however, read the Detainee Handbook provision regarding legal mail.  He also acknowledged that his outgoing legal mail has been sealed and marked by Detention Center staff.

FBI Special Agent Henry Schlumpf testified that he is the case agent for the prosecution of Defendant Kincade.  In November 2015, he asked the Assistant United States Attorney to issue a trial subpoena to obtain Defendant Kincade's incoming and outgoing telephone calls.  The United States Attorney's office prepared the subpoena and Agent Schlumpf emailed it to Mr. Zavala. Although the subpoena called for the telephone recordings to be produced on "February 9, 2015,"

1   i.e., February 9, 2016, the Detention Center sent him discs of recorded telephone calls on a monthly

2   basis.  The subpoena did not state that attorney-client telephone calls should not to be produced.

3   Agent Schlumpf testified that it was his understanding at the time the subpoena was served that the

4   Detention Center did not record attorney-client telephone calls.  The discs received from the

5   Detention Center contained recordings of approximately 50 telephone calls that Defendant Kincade

6   initially made to his girlfriend and during which he asked her to transfer to his attorney's office.

7   Agent Schlumpf testified that Mr. Zavala told him that Mr. Kincade's conduct in having his

8   girlfriend transfer his calls to a third person violated the Detention Center policy.  There is no such

9   prohibition in the Detainee Handbook.  He testified that Defendant Kincade's conduct, in any event,

10  bypassed the telephone system that automatically stops the recording of telephone calls placed to

11  listed attorney numbers.  Although Agent Schlumpf questioned whether these calls were privileged,

12  he did not listen to the calls after they were connected to Defendant's attorney's office.

13          Agent Schlumpf testified that there were approximately 10 to 12 telephone calls on the discs

14  that Mr. Kincade made directly to Ms. Bliss's office.  He believed that the recording on most of these

15  calls ended within a second or two after the call was answered by the attorney's office.  However,

16  some of these direct calls were recorded.  Mr. Kincade also made telephone calls that were answered

17  by a person named Jason, whom Agent Schlumpf initially believed was Ms. Bliss's paralegal, but

18  later learned is an attorney in her office.  Agent Schlumpf testified that he stopped listening once he

19  recognized that the calls were to the attorney's office and he did not listen to the substance of any

20  conversations between Defendant Kincade and his attorneys.  Agent Schlumpf provided copies of the

21  discs to the United States Attorney's office for production to Defendant's counsel.  He did not

22  inform the Assistant United States Attorney that the discs contained recorded telephone calls

23  between Defendant Kincade and his counsel.  He knew that the Assistant United States attorneys

24  would not listen to the calls because they were counting on him to do so.  He stated that if there was

25  an interesting call, he would tell the attorneys about it.

26          Following the hearing, Defendant's counsel filed under seal a disc containing the recordings

27  of the telephone calls that Mr. Kincade made directly to his counsel's telephone numbers and which

28  were subsequently provided to the Government.  *Notice of Manual Filing (ECF No. 217)*.  The

1   notice lists 13 recordings.  The length of each recorded conversation is also provided in the notice.

2   Defendant requests that "the Court refrain from listening to the content of these calls, unless the

3   Court doubts that the conversations between Kincade and his counsel were regarding Kincade's case

4   and were therefore privileged communications." *Id.* at pg. 1.

5       In September 2016, the Detention Center provided Agent Schlumpf with a disc that contained

6   the image of a mailing envelope addressed to Ms. Bliss's legal assistant.  *See Defendant's Hearing*

7   *Exhibit K.*  When Agent Schlumpf opened the file, he could see that it was a two page document.

8   After looking at the image of the envelope, he opened the second page of the document "figuring it

9   would probably be the backside of the envelope."  Instead, it was a handwritten letter.  He observed a

10  heading on the letter that stated "medical records."  Agent Schlumpf testified that he immediately

11  closed the file and did not read the contents of the letter.  Agent Schlumpf called Assistant United

12  States Attorney Michael and advised her of what occurred.  Ms. Michael instructed him to prepare a

13  form 302 report and he did so.  *See Defendant's Hearing Exhibit M.*  Agent Schlumpf later printed a

14  copy of the envelope and letter and placed them in a sealed envelope to be delivered to Defendant's

15  counsel.  He did not read the letter when performing this task.

16                                    **DISCUSSION**

17      1.   **Alleged Violation of Defendant's Sixth Amendment Right to a Speedy**
            **Trial.**

18

19      The Sixth Amendment to the United States Constitution states that "[i]n all criminal

20  prosecutions, the accused shall enjoy the right to a speedy and public trial."  The alleged violation of

21  a defendant's Sixth Amendment right is evaluated under a balancing test which considers the

22  following factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's

23  assertion of his right to a speedy trial; and (4) the prejudice to the defendant resulting from the delay.

24  *United States v. Alexander*, 817 F.3d 178, 1181 (9th Cir. 2016) and *United States v. Gregory*, 322

25  F.3d 1157, 1161 (9th Cir. 2003) (citing *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182 (1972)).

26  The four factors are related and must be considered together with such other circumstances as may

27  be relevant.  *Gregory*, 322 F.3d at 1161 (quoting *United States v. Tank Huu Lam*, 251 F.3d 852,

28  855–56 (9th Cir. 2001)).

The length of the delay is a threshold factor.  The delay must have been sufficiently lengthy, and therefore presumptively prejudicial, to trigger examination of the other factors.  *Alexander*, 817 F.3d at 1181 (citing *United States v. Sears, Roebuck & Co., Inc.*, 877 F.2d 734, 739 (9th Cir. 1989)). Delays approaching one year are generally considered presumptively prejudicial.  *Id.* (citing *United States v. Gregory*, 322 F.3d at 1161–62).  *See also United States v. Beamon*, 992 F.2d 1009, 1012 (9th Cir. 1993) (citing *Doggett v. United States*, 505 U.S. 647, 652 n. 1, 112 S.Ct. 2686, 2691 n. 1 (1992)). The court in *Beamon* noted that delays of 17 and 20 months were more than sufficient to trigger the speedy trial inquiry under *Barker*.  If the threshold showing is made, then the court considers the extent to which the delay exceeds the threshold point in light of the degree of diligence by the government and acquiescence by the defendant to determine whether sufficient prejudice exists to warrant relief.  *Beamon*, 992 F.2d at 1012, citing *Doggett*, 505 U.S. at 657, 112 S.Ct. at 2693–94.

The original indictment in this case was filed on March 11, 2015.  The current trial date is February 28, 2017.  Assuming that the case proceeds to trial on that date, the period of delay from the filing of the indictment to the commencement of trial will have been just short of two years.  This period of delay is sufficiently long to trigger application of the balancing test.

The second factor considers the reasons for the delay.  As stated in *Barker*, the reason for delay is closely associated with the length of the delay.  Different weights should be assigned to different reasons for delay.  "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government.  A more neutral reason such as negligence or overcrowded courts should be weighted less heavily, but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant."  *Barker,* 407 U.S. at 531, 92 S.Ct. at 2192.  This case involves two distinct periods with respect to the reasons for the delay.  The first period is from March 11, 2015 to July 12, 2016.  The second period is from July 12, 2016 through the current trial setting of February 28, 2017.

Between March 11, 2015 and March 31, 2016, the Court granted five stipulated continuances of the trial date.  Defendant has attempted to cast responsibility for most of these continuances on the Government's alleged delay in providing discovery.  *Reply (ECF No. 186), pgs. 2–4.*  The record, however, does not support this assertion.  The original indictment was filed approximately four

15

months after the November 14, 2014 robbery.  There is no evidence that the Government was dilatory in taking Mr. Kincade into custody and bringing him before the court within a month after the indictment was filed.  Defendants requested the first continuance of the trial date so that they would have adequate time to prepare.

Defendant Kincade argues that the second stipulation to continue resulted from the Government's decision to file the first superceding indictment.  There is, again, no indication that the Government unreasonably delayed filing the November 25 robbery charge.  In any event, the filing of the first superceding indictment was not the only reason for the continuance.  Defendant Kincade filed a motion to dismiss his appointed counsel, Mr. Fumo, on July 10, 2015.  The Court informed Defendant that a change of counsel would likely require continuance of the trial.  He did not oppose a continuance and the Court granted his motion for new counsel.  The superceding indictment was filed on the same day that attorney Jennifer Waldo was appointed as Defendant's counsel.  Because the trial was only two weeks away, Ms. Waldo would likely have requested a continuance even if the first superceding indictment had not been filed.

The third stipulation to continue the trial was filed after Ms. Bliss substituted into the case as Defendant's counsel.  Although Government counsel's medical leave was also cited as a reason for the continuance, it was primarily due to Ms. Bliss's retention and Defendant has accepted responsibility for this continuance.  *Reply (ECF No. 186), pg. 3*.  The fourth stipulation, filed on January 21, 2016, requested a continuance so that Defendant Kincade could file a motion for reconsideration of the magistrate judge's order denying his motion for production of the grand jury transcripts.  After the continuance was granted, however, Defendant did not file a motion.  Defendant has not shown that the Government's refusal to produce the grand jury transcripts or the denial of his motion for their production was incorrect.  Finally, the fifth continuance was sought because Defendant Kincade's counsel represented a defendant in another case that was set for trial in May, 2016 and because the Government's counsel had three other trials scheduled during the same week as the trial in this case.

Defendant Kincade has not demonstrated that the five continuances of the trial granted up through March 31, 2016 were caused by the Government's unreasonable delay.  While the filing of

1  the first superceding indictment and Government counsel's responsibilities in other cases played some

2  role in the continuances, the principal factor requiring the continuances was Defendant Kincade's

3  change of counsel.  There is no evidence that negligence or bad faith by the Government caused any

4  delay of the trial during the period from March 11, 2015 through July 12, 2016.

5         The third *Barker* factor considers the defendant's assertion of his right to a speedy trial.

6  Whether and how a defendant asserts his right is closely related to the other factors.  *Barker*, 407 U.S.

7  at 531, 92 S.Ct. at 2192.  "The strength of [defendant's] efforts will be affected by the length of the

8  delay, to some extent by the reason for the delay, and most particularly by the personal prejudice,

9  which is not always identifiable, that he experiences.  The more serious the deprivation, the more

10  likely a defendant is to complain.  The defendant's assertion of his speedy trial right, then, is entitled

11  to strong evidentiary weight in determining whether the defendant is being deprived of the right.  We

12  emphasize that failure to assert the right will make it difficult for a defendant to prove that he was

13  denied a speedy trial."  *Id.*, 407 U.S. at 531–32, 92 S.Ct. at 2192–93.

14         There is no evidence that Defendant Kincade affirmatively asserted his right to a speedy trial

15  or objected to any requested continuance prior to June 2016.  In *United States v. Shetty*, 130 F.3d

16  1324 (9th Cir. 1997), the defendant alleged that his rights under the Speedy Trial Act, 18 U.S.C. §

17  3161(c)(1), were violated.  The defendant's counsel, however, executed several stipulations to

18  continue the trial date which specifically set forth the reasons why the continuances were sought.  The

19  district court also provided findings as to the necessary length of each continuance.  In rejecting the

20  defendant's argument that his statutory right to a speedy trial was violated, the court stated that "[h]ad

21  Shetty or his counsel not agreed with *any* of the factual circumstances supporting the continuances or

22  the length of any continuance, it was *incumbent upon Shetty and his counsel* to refrain from signing

23  the stipulations and to advise the court by objection or otherwise." 130 F.3d at 1330 (emphasis in

24  original).  Although Defendant Kincade's motion is based on the violation of his Sixth Amendment

25  right, his attorneys' stipulations to five continuances also weighs against a finding that his Sixth

26  Amendment rights were violated prior to June 2016.

27         Before considering the fourth *Barker* factor, prejudice, the Court evaluates the second and

28  third factors in regard to the period of delay from July 12, 2016 through the currently scheduled trial

17

1   date of February 28, 2017.  On June 1, 2016, Ms. Michael asked Defendants' counsel if they and their

2   clients would agree to another continuance based on the fact that Ms. Michael had a pre-scheduled

3   vacation at the same time as the July trial date.  Ms. Bliss responded that Mr. Kincade was eager to go

4   to trial and did not want to waive his "Speedy Trial."  Ms. Bliss thereafter stated on June 6th that

5   Defendant Kincade would not waive his right to speedy trial and was prepared to go to trial on July

6   12, 2016.  Prior to receiving Ms. Bliss's June 6th email, Ms. Michael did not inform her that the

7   Government was contemplating filing a superceding indictment against Mr. Kincade for the

8   September 12, 2011 robbery and moving to disqualify Ms. Bliss on the basis of that charge.  Ms.

9   Michael's June 15 and 17 emails stated that the Government's decision to bring this additional charge

10  was based on the DNA test results that were received on June 6, 2016.  *See Motion (ECF No. 130),*

11  *Exhibits C and D.*  (The DNA report, itself, is dated June 7, 2016.  *Id.* at Exhibit G.).  Because the

12  DNA testing only matched Mr. Kincade's DNA to the Adidas pants, which Defendant Kincade

13  acknowledged belonged to him and which had been obtained by law enforcement back in 2011, it is

14  not surprising that Defendant viewed the Government's explanation for charging him with the 2011

15  robbery in June 2016 as ludicrous.

16          In its response to Defendant's motion to dismiss filed on October 27, 2016, the Government

17  states that the decision to file the September 2011 robbery charge was based on law enforcement

18  agents having reestablished contact with S.P. in May 2016, and her having reaffirmed her October 4,

19  2011 statements regarding Defendant Kincade's commission of the robbery.  This a more credible

20  reason for charging Defendant Kincade with the robbery four years and nine months after it occurred.

21  The Government's conduct is nevertheless troubling.  By bringing the September 12, 2011 robbery

22  charge in this case and then filing a motion to disqualify Ms. Bliss on the basis of that charge, the

23  Government forced a continuance of the July 12, 2016 trial date.  The Government was not required

24  to join the September 2011 robbery charge in this case and the legal basis for doing so was

25  questionable.  *See Order (ECF No. 167)* (granting Defendant's motion for severance).  The fact that

26  the Government pursued this course of action after Defendant refused to agree to a further trial

27  continuance supports a finding that the Government's conduct was, at minimum, unreasonable.

28          There can be a fine line between a negligent, but honest, misjudgment and bad faith.  If the

1   Government's counsel had objectively and fairly considered the circumstances in June 2016, she
2   would have determined that the proper course of action was to obtain a separate indictment on the
3   September 2011 robbery, notify Ms. Bliss, if necessary, that she could not represent Mr. Kincade on
4   that charge, and have permitted the November 2014 robbery charges to proceed to trial as scheduled
5   on July 12, 2016.  Although the prosecutor's course of action was unreasonable, the undersigned
6   stops short of finding intentional wrongdoing or bad faith.  The prosecutor may, in fact, have believed
7   that she was acting properly in joining the September 2011 robbery by superceding indictment, and
8   moving to disqualify Ms. Bliss from representing Mr. Kincade in the case as a whole.  Regardless of
9   her actual subjective intent, however, the Government caused an unreasonable and unnecessary
10  postponement of the July 12, 2012 trial date.  The second and third *Barker* factors therefore weigh in
11  Defendant's favor.

12          The total delay in this case is just short of two years.  This is not long enough to excuse
13  Defendant Kincade from demonstrating actual prejudice.  *United States v. Gregory*, 322 F.3d at 1163
14  (22 month delay not long enough to excuse proof of actual prejudice).  In analyzing a 9.6 month delay
15  arguably caused by the government's negligence, the court in *United States v. Alexander* stated that
16  "[t]he amount of prejudice a defendant must show is inversely proportional to the length and reason
17  for the delay. [ ] While we are concerned that the initial prosecutorial delay could have been reduced,
18  a 9.6 month period of negligence alone would not deny Alexander's right to a speedy trial without a
19  sufficient showing of prejudice."  817 F.3d at 1183, citing *Doggett v. United States*, 505 U.S. at 655–
20  56, 112 S.Ct. 2686.  Here, the Government's unreasonable conduct has caused a seven month trial
21  delay which is also not sufficient to establish a violation of Defendant Kincade's Sixth Amendment
22  speedy trial right without proof of actual prejudice.

23          Prejudice is assessed in light of the interests of the defendant which the speedy trial right was
24  designed to protect.  The Supreme Court has identified three such interests: (1) to prevent oppressive
25  pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the
26  possibility that the defense will be impaired.  "Of these, the most serious is the last, because the
27  inability of a defendant to adequately prepare his case skews the fairness of the entire system.  If
28  witnesses die or disappear during a delay, the prejudice is obvious.  There is also prejudice if defense

1  witnesses are unable to recall accurately events of the distant past.  Loss of memory however, is not

2  always reflected in the record because what has been forgotten can rarely be shown." *Barker*, 407

3  U.S. at 532, 92 S.Ct. at 2193.

4  　　　　Defendant Kincade has not shown that he has suffered actual prejudice in his ability to defend

5  against the robbery charges.  He has not identified any lost witnesses or evidence. The prejudice to

6  Defendant is the additional pretrial detention and the anxiety or concern he will experience while

7  awaiting trial.  He asserts that as a result of being incarcerated for nearly 21 months, "[h]e has lost his

8  job, he has lost his money, his personal relationships have been broken, and he has been severely

9  hindered in his ability to effectively assist in preparing his defense." *Reply (ECF No. 186), pg. 13*.

10  The Government is responsible for the last 7 months of this delay.  Defendant's loss of employment,

11  money or personal relationships had arguably already occurred during the first 14 months of detention

12  for which the Government is not at fault.  Although the prejudice suffered by Defendant is not

13  unimportant, it does not weigh as strongly in favor of dismissal as prejudice that impairs the defense.

14  　　　　The Supreme Court in *Barker* noted that dismissal of an indictment for violation of a

15  defendant's speedy trial right  "is indeed a serious consequence because it means that a defendant who

16  may have been guilty of a serious crime will go free, without having been tried.  Such a remedy is

17  more serious than an exclusionary rule or a reversal for a new trial, but it is the only possible remedy."

18  *Id.* at 522, 92 S.Ct. at 2188.  The undersigned has frankly struggled with whether the Government's

19  conduct, and the resulting delay after Defendant explicitly invoked his speedy trial rights, justifies the

20  serious consequence of dismissing the indictment.  If the Court believed that the prosecutor acted with

21  knowledge that her course of conduct was improper and for the purpose of obtaining a continuance so

22  that she could take a vacation, or to improperly harm the Defendant's ability to defend the case, then

23  it would recommend dismissal of the indictment.  Because the Court does not conclude that the

24  prosecutor acted in bad faith, however, dismissal of the indictment is too severe a sanction, in light of

25  the length of the delay and the nature of prejudice suffered by Defendant.

26  　　　　**2.   Alleged Government Intrusion into Attorney-Client Relationship.**

27  　　　　Defendant Kincade argues that the indictment should be dismissed based on the Government's

28  violation of his attorney-client privilege.  The sanctity of the attorney-client relationship is one of the

1    cornerstones of the adversary system. *United States v. Hernandez*, 937 F.2d 1490, 1493 (9th Cir.

2    1991) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682 (1981)).  As

3    *Upjohn* states, the purpose of the privilege "is to encourage full and frank communications between

4    attorneys and their clients and thereby promote broader public interests in the observance of law and

5    administration of justice." *Id.*  The ability of detained defendants to engage in confidential telephonic

6    communications with their attorneys is an important right that should be protected from the prying

7    ears of the prosecution.  The Federal Detention Center and the Government are responsible for

8    adopting reasonable procedures to ensure that detainees have the ability to confer confidentially with

9    their counsel and that those confidences are not violated.

10        The evidence presented at the hearing casts serious doubt on whether the Detention Center

11   took adequate steps to ensure that attorney-client telephone calls are not recorded.  Although the

12   recording of attorney-client telephone calls can be avoided by entering the attorney's telephone

13   number into the Detention Center's telephone system, which is then programmed not to record calls

14   to or from the number, the steps that detainees or their attorneys are required to take to prevent the

15   recording of calls were not well disseminated until recently.[3]  While it is possible that detainees were

16   informed of these matters prior to October 2016, the Government did not attempt to show that

17   Defendant Kincade or other detainees were adequately informed of the procedures to prevent the

18   recording of attorney telephone calls. The Government, instead, opposes Defendant's motion on the

19   basis that it did not listen to the recordings of attorney-client telephone calls and, therefore, Defendant

20   cannot show that his defense has somehow been prejudiced.

21        In *United States v. Hernandez*, the court stated that "[d]espite the high approbation our system

22   has for the attorney-client privilege, the Supreme Court has twice held that government invasion of

23   that privilege or of the defense camp is not sufficient by itself to cause a Sixth Amendment violation.

24   The defendant must have been *prejudiced* by such action."  937 F.2d at 1493 (citing *United States v.*

25   *Morrison*, 449 U.S. 361, 365, 101 S.Ct. 665, 668 (1981) and *Weatherford v. Bursey*, 429 U.S. 545,

26   558, 97 S.Ct. 837, 845 (1977) (emphasis in original)).  The court held that the defendants' Sixth

27

28        [3] Reportedly, the telephone numbers of the Federal Public Defender's office have been entered into the
     telephone system, and calls to and from that office are not recorded.

1   Amendment rights were not violated where a co-defendant, after agreeing to become a government

2   witness, attended joint defense meetings with the defendants and their counsel.  In affirming the

3   denial of the motion to dismiss, the court relied on the district judge's findings that the witness did

4   not disclose to the government any statements made by co-defendants or trial strategy he may have

5   learned of during the meetings.

6          In *United States v. Morrison*, which involved unsuccessful efforts by law enforcement agents

7   to undermine the defendant's relationship with her attorney, the Court stated that "absent

8   demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly

9   inappropriate, even though the violation may have been deliberate."  449 U.S. at 365, 101 S.Ct. at

10  668.  In *Weatherford v. Bursey*, an undercover law enforcement officer participated with plaintiff in

11  the commission of a crime.  The officer, while still posing as a conspirator, was invited to meetings

12  between plaintiff and his criminal defense counsel.  The officer attended the meetings, but did not

13  discuss or pass on to his supervisors or the prosecuting attorney "'any details or information regarding

14  the plaintiff's trial plans, strategy, or anything having to do with the criminal action pending against

15  the plaintiff.'"  429 U.S. at 548, 97 S.Ct. at 840.  The Supreme Court stated that "[t]here being no

16  tainted evidence in this case, no communication of defense strategy to the prosecution, and no

17  purposeful intrusion by [the officer], there was no violation of the Sixth Amendment insofar as it is

18  applicable to the States by virtue of the Fourteenth Amendment."  *Id.*, 429 U.S. at 558, 97 S.Ct. at

19  845.

20         In *United States v. Green*, 962 F.2d 938 (9th Cir. 1992), the defendant was charged with

21  attempted counterfeiting.  A law enforcement officer recorded a telephone call between a paper

22  company employee and a law clerk in defendant's attorney's office.  The law clerk asked questions

23  about the type of paper the defendant had purchased from another supplier and stated that the defense

24  team was trying to determine the differences between the types of paper purchased by the defendant

25  and the type used to produce currency.  The officer provided the recording to the prosecutor who

26  subsequently notified defendant's attorney of the incident and produced the officer's report and a copy

27  of the recorded call.  In holding that the defendant's Sixth Amendment rights were not violated, the

28  court stated that "[w]e have repeatedly held in similar circumstances that the Sixth Amendment is

1  violated only when the government's action 'substantially prejudices the defendant.'"  962 F.2d at
2  941. (Citations omitted).  Although a defense strategy was revealed to the prosecutor, there was no
3  indication that defendant's ability to defend himself was impaired or that the government was able to
4  use the information in any way.  The court therefore found no Sixth Amendment violation.  *Id.* at 941.
5  The court also rejected defendant's argument that the government violated his Fifth Amendment due
6  process rights.  The court noted that the officer could have used better judgment in deciding to record
7  the clerk's conversation, but that his less than exemplary performance of duty did not justify the
8  extreme measure of dismissing the indictment.  *Id.* at 941–42.

9        In *United States v. Haynes*, 216 F.3d 789 (9th Cir. 2000), a private investigator, hired by
10  defendant's attorney, became involved in criminal activity with the defendants and then turned
11  informant for the government.  Although the investigator turned over privileged information to the
12  government, the government was vigilant about the privilege and established safeguards to protect
13  such information.  The court held that suppression of the tainted evidence at trial was sufficient to
14  cure any prejudice resulting from the intrusion on the attorney-client relationship and that dismissal of
15  the indictment was not required.  216 F.3d at 796–97.

16        The Court has no reason to doubt that some of the recorded calls produced in response to the
17  subpoena contain privileged discussions between Defendant Kincade and his counsel.  *See Notice of*
18  *Manual Filing (ECF No. 217).*  Agent Schlumpf's conduct with respect to these telephone calls also
19  raises some doubt as to his testimony that he did not listen to them.  Agent Schlumpf testified that at
20  the time the subpoena was issued in November 2015, he believed that the Detention Center did not
21  record telephone calls between detainees and their attorneys.  He became aware as he listened to the
22  recordings, however, that at least some of the recorded telephone calls were placed directly by
23  Defendant Kincade to his attorney's phone numbers.  Agent Schlumpf also testified that the
24  recordings of most of these calls stopped within a second or two after the calls were connected.  The
25  notice filed by Defendant, however, states that the shortest duration of any recording was 49 seconds.
26  *See Notice of Manual Filing (ECF No. 217).*  Assuming the notice is accurate, Agent Schlumpf's
27  testimony is incorrect.

28        Once Agent Schlumpf became aware that attorney-client telephone calls had, in fact, been

1  recorded and produced, it seems logical that he would have made some inquiry as to whether the

2  receipt of such recorded conversations pursuant to the subpoena was proper.  He did not.  It is also

3  puzzling that Agent Schlumpf did not notify the prosecutors about the recorded attorney-client calls

4  when he provided them with copies of the discs to produce to the Defendant.  It was certainly

5  foreseeable that Defendant would raise the issue of whether the Government had listed to the

6  attorney-client calls, such that Agent Schlumpf would have warned the prosecutors about the presence

7  of attorney-client telephone calls on the recordings.  While these circumstances raise doubt about the

8  credibility of Agent Schlumpf's testimony, the Court cannot conclude on the present record that he or

9  the Government attorney's listened to any of the attorney-client conversations, *and*, in so doing,

10 acquired information that has unfairly prejudiced the Defendant's ability to defend against the charges

11 in this case.[4]

12      Defendant has also not shown that his attorney-client privilege was violated by the production

13 of his letter to Ms. Bliss's legal assistant.  The Detainee Handbook sets forth the procedure for

14 handling incoming and outgoing legal male.  While it is possible that the envelope and letter were

15 copied by the Detention Center in violation of its own procedures for handling legal mail, it is equally

16 possible that Defendant Kincade bears responsibility for its production by failing to follow the

17 procedures for sending legal mail to his attorney.  Agent Schlumpf testified that he did not read the

18 letter and the Court finds no reason to reject his testimony.  Defendant has not shown that the letter

19 contained information, which if disclosed to the Government, would so prejudice his ability to defend

20 the case as to require dismissal.  Defendant has failed to show that he has been prejudiced by the

21 production of his attorney-client communications to the Government.  His motion to dismiss the

22

23      [4] Defendant states in his motion to compel production of grand jury transcripts that Agent Schlumpf

24 interviewed Co-Defendant Florez on August 9, 2016 and "Florez again changed his story, adding new details.
   This interview occurred after Schlumpf obtained and listened to 13 calls from Kincade to counsel." *Motion*

25 *(ECF No. 216), pg. 4.*  This assertion does not support a finding of prejudice.  Nor does it reasonably indicate that
   further inquiry will establish prejudice.  First, Defendant provides no information regarding the substance of

26 Florez's statements.  Second, Defendant does not show how any change in Florez's statements relates to
   information that was disclosed during Mr. Kincade's confidential discussions with his attorney—thereby

27 indicating that the change in Florez's statement resulted from the Government's knowledge of what Defendant
   and his counsel discussed.  Third, Defendant does not show how any "new details" in Florez's statements have

28 prejudiced his defense.

1  indictment on this ground must therefore be denied.

2  **CONCLUSION**

3  The Government's unreasonable conduct has caused a seventh month delay of Defendant

4  Kincade's trial on the November 2014 robbery charges.  Defendant's ability to defend the charges

5  against him, however, has not been prejudiced by this delay.  The prejudice experienced by Defendant

6  in the form of extended pretrial detention and anxiety and concern are not so severe in light of the

7  length of the delay and the egregiousness of the Government's conduct, to justify dismissal of the

8  indictment.  The Defendant has also not shown that he has suffered actual prejudice by the production

9  of his attorney-client communications to the Government which it denies having listened to or read.

10  Accordingly,

11  **RECOMMENDATION**

12  **IT IS RECOMMENDED** that Defendant Robert Kincade's Motion to Dismiss for

13  Prosecutorial Delay and Misconduct (ECF No. 130) be **denied**.

14  **NOTICE**

15  Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in

16  writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held

17  that the courts of appeal may determine that an appeal has been waived due to the failure to file

18  objections within the specified time. *Thomas v. Arn,* 474 U.S. 140, 142 (1985).  This circuit has also

19  held that (1) failure to file objections within the specified time and (2) failure to properly address and

20  brief the objectionable issues waives the right to appeal the District Court's order and/or appeal

21  factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir.

22  1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

23  DATED this 28th day of December, 2016.

24

25  GEORGE FOLEY, JR.
United States Magistrate Judge

26

27

28

25