1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) Case No.: 2:15-cr-071-JAD-GWF |
| | ) |
| vs. | ) **FINDINGS &** |
| | ) **RECOMMENDATIONS** |
| | ) |
| | ) **Re:  Motion to Dismiss (ECF No. 169)** |
| ROBERT DEVELL KINCADE,** | ) |
| | ) |
| Defendant. | ) |
| | ) |

This matter is before the Court on Defendant Robert Devell Kincade's Motion to Dismiss Second Superceding Indictment (ECF No. 169), filed on October 27, 2016.  The Government filed its Response (ECF No. 203) on November 18, 2016 and Defendant filed his Reply (ECF No. 212) on November 30, 2016.  The Court conducted a hearing on December 14, 2016.  Because Defendant raised new legal arguments in his reply, the Court granted the Government leave to file its Sur-Reply (ECF No. 225) on December 14, 2016.

## BACKGROUND

The background of this case is set forth in the Court's Findings and Recommendation (ECF No. 235) which is incorporated herein.  The following discussion focuses specifically on Count One of the Second Superceding Indictment (ECF No. 90) which charges Defendant Kincade with the robbery of the City National Bank in Las Vegas, Nevada.

On September 12, 2011 an African-American adult male robbed the City National Bank in Las Vegas, Nevada.  Eyewitnesses wrote voluntary statements for the police which provided the following descriptions of the robber:

(a)  The teller who was robbed stated that the robber "was wearing a black hoodie, with the hood over his head and a scarf over his face."

(b)  A second teller stated that she saw a car pull into the handicap spot outside the bank.  "[T]he passenger door opened [and] a man [with a] bandana got out of the car [and] began rushing in."

(c)  A bank customer observed the robber running toward the door to the get-away vehicle.  He described the robber as a "black guy wearing bandana on his face. . . . I saw dark bandana on his face. . . . He is more than 6 feet tall and medium build."

(d)  A bank customer who was walking out of the bank stated: "I saw a guy stepping out of a black car.  [H]e was 6'4"- 6' 5" wearing dark blue or black hoodie, blue bandana over his face, black dickies pants, dark shoes, I think Chuck [T]aylors."
 *Defendant's Hearing Exhibit A.*

The Las Vegas Metropolitan Police Department issued a flyer dated September 13, 2011 which contained two still images from the bank surveillance video and described the robber as a "Black male, 18-20 years old, 5'8" - 5'10", wearing a blue hoodie, blue bandana over his face, gloves, black Dickie pants and dark colored Chuck Taylor basketball shoes."  *Defendant's Reply (ECF No. 212), Exhibit 3.*

The bank surveillance video, which includes four views from different camera locations, shows the robber run quickly into the bank, jump over a desk adjacent to the teller windows, and after taking money from the cash drawers, run out of the bank.  *Government's Exhibit 1.*  The robber was inside the bank approximately 43 seconds.  The robber was wearing dark pants with white stripes down the sides, a dark hooded sweatshirt, and light blue gloves.  In the brief video footage that depicts his face, the robber appears to be wearing a covering over his face.

On October 4, 2011, police officers responded to a reported domestic violence incident between Defendant Kincade and his girlfriend.  At the time, Mr. Kincade was on federal supervised release for prior bank robbery convictions.  Law enforcement officers interviewed Defendant's girlfriend "S.P." who stated that Kincade became angry on September 11, 2011 about money issues which led to an argument between them.  An adult male came to the residence and picked-up

1   Kincade who was wearing gray shorts, a black shirt and gray and white shoes.  Kincade left the

2   house carrying black pants, a black hooded sweatshirt, a black "due rag," and a black hat.  S.P. saw

3   Kincade on the evening of September 12, 2011 at which time he looked "wild."  *Response (ECF No.*

4   *203), Exhibit 1.*

5          S.P. again saw Kincade on the morning of September 13, 2011 when he got into a Chevrolet

6   Tahoe with S.P.  Kincade was wearing the same clothes he had on when he left the residence on

7   September 11th.  Kincade told S.P. that "he wanted to come home and that he had 'robbed a bank.'"

8   *Id.*  He stated that the take was $16,000 and his share was $8,000.  He spent most of the robbery

9   proceeds playing craps.  S.P. reported that on October 2, 2011, Kincade talked about committing

10   another bank robbery.  Kincade stated that the previous robbery was "easy" and "that when he went

11   into the bank he jumped the counter and told the clerk what he wanted."  He stated that the

12   individual who picked him up on September 11th was the get-away driver.  S.P. stated that Kincade

13   did not use a gun because guns cause more charges.  She stated that the hooded sweatshirt and

14   bandana that Kincade wore in the robbery were located in the Chevrolet Tahoe which she and

15   Kincade owned.  S.P. also stated that a box of latex gloves, "the same as was used in the robbery,"

16   were in the vehicle.  S.P. took the officers to where the Chevrolet Tahoe was located and gave them

17   permission to search it.  Officers recovered a box of vinyl gloves, a black BB gun, a hooded

18   sweatshirt, a black "doorag," a black t-shirt and a black bandana from the vehicle.  *Id.*  At some point

19   after October 4, 2011, it is not clear when, S.P. repudiated her statement implicating Defendant

20   Kincade in the September 12, 2011 robbery.

21          On October 4, 2011, Las Vegas Metropolitan Police Department detectives interviewed

22   Defendant Kincade following his arrest for the assault on S.P.[1]  *Defendant's Reply (ECF No. 212),*

23   *Exhibit 2.*  Kincade denied that he committed the robbery and told the detectives that S.P. had a

24   motive to make a false accusation against him.  A petition to revoke Mr. Kincade's supervised

25   release was filed in the District Court on October 20, 2011.  The petition charged that Kincade

26

27

28        [1] Defendant contends that he was not informed of his *Miranda* rights prior to questioning and has moved to suppress introduction of this statement at trial.

3

1   violated the conditions of his supervised release by committing the bank robbery.  It also charged

2   him with damaging a police car after he was arrested and with crimes related to the assault on S.P.[2]

3         On November 3, 2011, an FBI agent and a police detective interviewed Defendant Kincade at

4   the Clark County Detention Center.  Kincade told the officers that two individuals, identified as

5   Pimpin and Dray, committed the September 12, 2011 robbery.  Kincade stated that he met with

6   Pimpin before the robbery, and with Pippin and Dray after the robbery.   He described Dray as a

7   black male, approximately six feet tall with a medium build.  Kincade stated that "Dray went into the

8   bank (City National Bank), jumped the counter, and robbed them."  Pimpin was the getaway driver.

9   Kincade also stated that Pimpin gave him $2,500 apparently for advice he had given him about how

10  to commit a robbery.  *Defendant's Reply (ECF No. 212), Exhibit 4, pg. 2.*

11        During Defendant's May 10, 2012 initial appearance on the petition to revoke his supervised

12  release, Assistant United States Attorney Kathleen Bliss informed the Court that "[t]he mother lode

13  of the allegations against [Kincade] contained in the Petition are not true.  The Government

14  investigated this and he was – had no involvement whatever in this robbery."  *See Sealed Opposition*

15  *to Government's Motion to Disqualify Defense Counsel (ECF No. 113). Exhibit B, Transcript of May*

16  *10, 2012 Hearing, pg. 5.*  The Government filed an addendum to the petition on May 11, 2012 in

17  which it stated that the allegation that Kincade committed the robbery was determined to be a

18  fictitious claim lodged against him.  *Addendum (ECF No. 73)*, Case No. 2:05-cr-320-LDG-PAL.  At

19  the subsequent revocation hearing on June 4, 2012, Ms. Bliss advised the Court that although the

20  Government and the Probation Office had originally believed that Mr. Kincade participated in the

21  September 12, 2011 robbery, "the Federal Bureau of Investigation after looking at it and

22  investigating it further – we were prepared to file a complaint.  However, it turns out he didn't have

23  anything to do with that bank robbery."  *Id., Exhibit C, Transcript of June 4, 2012 Hearing, pgs. 2-3.*

24        As more fully discussed in Findings and Recommendation (ECF No. 235), Defendants

25  Kincade and Florez were indicted in March 2015 for a November 14, 2014 bank robbery.  A

26

27       [2] The petition was filed in Case No. 2:05-cr-00320-LDG-PAL which is sealed.  The circumstances
    relating to Defendant's alleged assault on S.P. are set forth in the arrest report.  *Defendant's Reply (ECF No.*

28  *212), Exhibit 1.*

1  superceding indictment was filed against them in July 2015 for a November 25, 2014 bank robbery.

2  In September 2015, Kincade retained Ms. Bliss, who was now in private law practice, as his defense

3  counsel.  After several continuances of the trial date, trial was set for July 12, 2016.

4       On May 12, 2016, FBI agents contacted S.P. at her residence and interviewed her.  S.P.

5  reaffirmed the information that she provided to the police on October 4, 2011 regarding the

6  September 12, 2011 bank robbery.  *Government's Response (ECF No. 203), Exhibit 2.*  During this

7  interview, S.P. was shown a flyer from the September 12, 2011 robbery and positively identified

8  Defendant Kincade as the man photographed robbing the bank.  S.P. recognized the clothes she had

9  bought for Kincade which he wore during the robbery.  S.P. stated that Kincade called her from the

10  Clark County Detention, apparently sometime in late 2011, and made her fear for her life.  "Kincade

11  implied that if she stuck to her story, physical harm would come to her."  Based on this threat, S.P.

12  retracted the statement that she gave to the police on October 4, 2011.  After Kincade got out of

13  prison in October 2013, "he came to visit her, and hung out with her, so she tried to figure out a way

14  to get away from him.  In April 2014, S.P. moved to [location redacted] to start over.  She did not

15  hear from Kincade until 2015 when he emailed her and then called her from Mississippi."  *Id.*  After

16  Kincade was arrested in Mississippi, his nephew tried to call S.P.  *Id.*

17       The Government represents that in May or June 2016, it also made contact with the victim

18  teller from the September 2011 robbery.

19       The Government obtained a June 7, 2016 report from the Las Vegas Metropolitan Police

20  Department's Forensic Laboratory regarding DNA tests on four items allegedly associated with

21  Defendant Kincade: (1) a pair of Adidas pants, (2) a black doo rag, (3) a black bandana with a white

22  design, and (4) a BB gun.  A match was found between Robert Kincade's known DNA and the DNA

23  on the Adidas pants.  No DNA match could be established on the other items.  *Motion (ECF No.*

24  *130), Exhibit G.*  The Adidas pants were apparently taken from Mr. Kincade at the time of his arrest

25  in October 2011 and he has never denied that they belonged to him.[3]  As discussed in the Court's

26

27

28      [3] It appear from the surveillance video that the robber may have been wearing Adidas brand pants, i.e.,
the robber's pants that had three white stripes down each pant leg.  *Government's Hearing Exhibit 1.*

1   Findings and Recommendations (ECF No. 235), the Government informed Ms. Bliss in June 2016

2   that the DNA test results provided new evidence for its decision to indict Defendant Kincade for the

3   September 12, 2011 robbery.  It did not mention S.P.'s May 2016 statement as the basis for its

4   decision.

5         On June 29, 2016, the Government filed the second superceding indictment charging

6   Defendant Kincade with the September 12, 2011 robbery.  On the same day, the Government moved

7   to disqualify Ms. Bliss from representing Defendant Kincade.  The Court subsequently disqualified

8   Ms. Bliss from representing Defendant on the September 12, 2011 robbery charge, but severed trial

9   of that charge from the November 2014 robbery charges and permitted Ms. Bliss to continue

10  representing the Defendant on those charges.  As a result of these developments and subsequent

11  pretrial motions, the trial date was again continued.  Trial on the November 2014 robbery charges is

12  set for February 28, 2017.  Trial on the September 12, 2011 robbery charge is set for March 28,

13  2017.

14                              **DISCUSSION**

15  1.    **Alleged Violation of Defendant's Fifth Amendment Right to Due Process of Law**
          **as a Result of Pre-indictment Delay.**

16

17         Defendant argues that the Government violated his Fifth Amendment right to due process of

18  law by not charging him with the September 12, 2011 robbery until more than 4 year and 8 months

19  after it was committed.

20         The statute of limitations is the primary guarantee against the bringing of overly stale

21  criminal charges.[4]  *United States v. Marion*, 404 U.S. 307, 322, 92 S.Ct. 455, 464 (1971).  The

22  statute "provide[s] predictability by specifying a limit beyond which there is an irrebuttable

23  presumption that a defendant's right to fair trial would be prejudiced."  *Id.*  The Court stated,

24  however, that "the statute of limitations does not fully define [a defendant's] rights with respect to

25  events occurring prior to indictment" and that the Due Process Clause has a limited role to play in

26  protecting against oppressive delay.  *Id.* at 324, 92 S.Ct. at 465; *United States v. Lovasco*, 431 U.S.

27  ─────────────────

28         [4] The statute of limitations for robbery is five years from the date of the offense.  18 U.S.C. § 3282.

783, 789, 97 S.Ct. 2044, 2048 (1977). In order to obtain dismissal based on pre-indictment delay in violation of the Fifth Amendment, the defendant must satisfy a two-part test. "First, 'a defendant must prove that he suffered actual, non-speculative prejudice from the delay,' meaning proof that demonstrates exactly how the loss of evidence or witnesses was prejudicial." *United States v. Barken*, 412 F.3d 1131, 1134 (9th Cir. 2005) (quoting *United States v. Doe*, 149 F.3d 945, 948 (9th Cir. 1998) and *United States v. Sherlock*, 962 F.2d 1349, 1353 (9th Cir. 1989)). "The defendant's burden to show actual prejudice is heavy and is rarely met." *Id.*

The second part of the test applies only if the defendant has demonstrated actual prejudice. *Barken*, 412 F.3d at 1134 (citing *United States v. Manning*, 56 F.3d 1188, 1194 (9th Cir. 1995)). Under the second part, the delay is weighed against the reason for it, and the defendant must show that the delay 'offends those fundamental conceptions of justice which lie at the base of our civil and political institutions.'" *Id.* (quoting *United States v. Doe*, 149 F.3d at 948, and *Sherlock*, 962 F.2d at 1353–54)).

Defendant Kincade argues that he has suffered actual prejudice because he has not been able locate the four eyewitnesses to the robbery. He argues that these witnesses are critical to his defense because the Government's case is predicated on what the robber allegedly wore. He argues that if an indictment had been filed when the eyewitnesses' recollections of the robbery were still fresh, he would have been able to interview or cross-examine them and develop additional inconsistencies or conflicts in their descriptions of the robber and his clothing. Defendant claims that the eyewitnesses' memories are likely to be so faded that they will have to completely rely on their voluntary written statements which will prevent any effective cross-examination. Defendant also argued at the hearing that he could have obtained alibi testimony for the day of the robbery if he had been promptly charged. The Government's representations to the Court in May and June 2012 that he did not commit the robbery also lulled him into believing it was not necessary to prepare a defense.

The Government states that all four eye witnesses have been located, and can be interviewed or subpoenaed to testify at trial by Defendant. The Government also argues that the differences in the eyewitnesses' descriptions of the robber are not substantial, and that any such differences are outweighed by the surveillance video which depicts the robber.

A claim based on lost testimony fails unless the defendant establishes that the "'lost testimony actually impaired meaningfully [his] ability to defend himself.'"  *United States v. Doe*, 149 F.3d at 948 (quoting *United States v. Moran*, 759 F.2d 777, 782 (9th Cir. 1985) and *United States v. Pallan*, 571 F.2d 497, 500–01 (9th Cir. 1978)).  The defendant in *Doe* claimed that he was prejudiced by a four year delay in charging him with a murder and kidnapping because two of the four witnesses to the crime changed their stories and because he was not able to inspect the contents of a fanny pack that was reportedly found next to the victim.  In rejecting defendant's claim of prejudice based on the changes in the witnesses' stories, the court stated:

> The new testimony regarding a knife did not "actually impair[] meaningfully" Appellant's ability to defend himself.  *Id.*  He was able to rebut the accounts of the knife on cross-examination.  One witness admitted that she changed her story.  She testified that she had only assumed there was a knife because Appellant made stabbing motions toward the victim.  The other witness admitted on cross-examination that she had witnessed stabbing motions but had not seen a knife.  Even the government's medical witness testified on cross-examination that he neither observed nor read about stab wounds during his review of the photos and the autopsy report.  We conclude that Appellant did not meet his "heavy burden" of establishing prejudice based upon loss of testimony because he was able to rebut the stories of the knife on cross-examination.  *See United States v. Bracy*, 67 F.3d 1421, 1427 (9th Cir. 1995) (holding that claims of prejudice based on failed or post-event witness memories lack merit where a defendant can effectively cross-examine the witnesses about the events.)

149 F.3d at 949.

In *United States v. Sherlock*, the defendants were charged with rape thirty-six months after the alleged offenses occurred.  The defendants claimed actual prejudice because the alleged victims repeatedly testified that they could not remember certain events that occurred.  In rejecting this claim, the court stated that the record did not indicate how the victims would have testified had their memories not dimmed, and defendants therefore did not show that the loss of memory had meaningfully impaired their ability to defend themselves.  962 F.2d at 1354.

*Doe* and *Sherlock* are instructive here because Defendant has not established that the memories of the eyewitnesses have, in fact, materially diminished since the robbery.  Nor is there any evidence that the eyewitnesses would have provided testimony materially more favorable to Defendant had they testified closer to the time of the robbery.  It is also questionable whether the

8

1    alleged inconsistencies in the eyewitness' description of the robber will be material at trial.   The

2    principal evidence against Defendant appears to be the surveillance video of the robbery and the

3    expected testimony of S.P. regarding (1) the clothes that Defendant took with him when he left the

4    residence on September 11, 2011; (2) Defendant's appearance on the evening September 12, 2011;

5    (3) the admissions that Mr. Kincade allegedly made about the robbery on September 13 and October

6    2, 2011; (4) the items found in the Chevrolet Tahoe on October 4, 2011; and (5) S.P.'s May 2016

7    identification of Kincade as the robber depicted in the surveillance video.   While Defendant may be

8    able to impeach S.P.'s testimony, he has not shown that his ability to do so is dependent on effective

9    cross-examination of the eyewitnesses.

10         Defendant's argument that the pre-indictment delay prevented him from obtaining alibi

11    testimony is also speculative.   Defendant has not identified any individual who would have testified

12    that he was elsewhere at the time of the robbery, but who is no longer available to testify.   This is not

13    a case in which the accused was unaware of the accusation against him until months or years after

14    the alleged crime occurred.   The police accused Mr. Kincade of the September 12, 2011 robbery

15    when they interviewed him on October 4, 2011.   If Defendant knew of persons who could provide

16    him with an alibi, there is no reason to believe that he would not have determined who they were and

17    provided their identities to the attorney who represented him on the petition to revoke his supervised

18    release in 2012 or to his defense counsel after he was indicted in this case.   It is not necessary,

19    however, to rule-out the possibility that Defendant could have produced an alibi witness.   Defendant

20    must prove that the alibi witness actually existed, what the witness would have said, and that the

21    witness is no longer available because of the pre-indictment delay.   *United States v. Mills*, 641 F.2d

22    785, 788 (1981).

23         Because Defendant has failed to demonstrate actual prejudice, the Court is not required to

24    reach the second part of the due process test.   The Government nevertheless argues that if some

25    actual prejudice was established, the reasons for the delay in this case would still not justify

26    dismissal of the indictment.   The Government states that the decision to charge Defendant with the

27    robbery in June 2016 was based in large part on locating and obtaining S.P.'s statement in May 2016.

28    The credibility of this assertion is called into doubt by the fact that the prosecutor did not provide it

1   as a reason when she informed Ms. Bliss that the Government intended to charge the robbery in a

2   superceding indictment and to move to disqualify her from representing Defendant.  It is quite

3   understandable that Defendant questioned the Government's good faith in filing this charge when the

4   only "new evidence" offered to support it was the DNA test results[5] and where the Defendant had

5   recently turned down the prosecutor's request for a trial continuance.

6        The Court accepts the Government's representations regarding the significance of the May

7   2016 interview of S.P. to its decision to charge Defendant with the September 12, 2011 robbery.

8   S.P.'s testimony appears critical to the Government's ability to prove that Defendant Kincade

9   committed the robbery.  S.P.'s retraction of her October 4, 2011 statement was therefore a valid

10  reason for not prosecuting Defendant in 2011 or 2012.  Once S.P. reaffirmed her October 4, 2011

11  statement in May 2016, however, the Government again had a reasonable basis to pursue the robbery

12  charge.  The Defendant has therefore failed to meet his burden of proving a violation of his Fifth

13  Amendment right to due process of law based on pre-indictment delay.

14       **2.**    <u>**Alleged Violation of Defendant's Sixth Amendment Rights.**</u>

15       Defendant argues that the Government's delay also violated his Sixth Amendment right to

16  confront the witnesses against him and his right to a speedy trial.  Defendant's confrontation

17  argument is encompassed by his Fifth Amendment due process claim.  Because Defendant has not

18  shown that he suffered actual prejudice as a result of the pre-indictment delay, he has also not shown

19  that his right to confront and cross examine the witnesses against him has been violated.  The Sixth

20  Amendment's guarantee of a speedy trial does not apply to pre-indictment delay because "only 'a

21  formal indictment or information or else the actual restraints imposed by arrest and holding to

22  answer a criminal charge  . . . engage the particular protections of that provision." *Lovasco*, 431 U.S.

23  at 788, 97 S.Ct. at 2048 (quoting *United States v. Marion*, 404 U.S. 307, 320 92 S.Ct. 455, 464

24  (1971)).  Therefore, Defendant's speedy trial claim applies only to the delay that occurred from the

25

26      [5] The Court is not persuaded by Defendant's assertion that the DNA test results on the Adidas pants are

27  irrelevant.  The test results provide additional evidence connecting the pants to Mr. Kincade.  The pants may be
    similar to those worn by the robber as depicted in the surveillance video and, together with the other evidence,

28  may support the claim that Defendant was the robber.

1   filing of the second superceding indictment on June 29, 2016 through the date presently set for

2   trial—March 28, 2017.

3        In evaluating Defendant's Sixth Amendment claim, the Court considers (1) the length of the

4   delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4)

5   the prejudice to the defendant resulting from the delay.  *United States v. Alexander*, 817 F.3d 178,

6   1181 (9th Cir. 2016) and *United States v. Gregory*, 322 F.3d 1157, 1161 (9th Cir. 2003) (citing

7   *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182 (1972)).  The four factors must be considered

8   together with such other circumstances as may be relevant.  *Gregory*, 322 F.3d at 1161.

9        The length of the delay is a threshold factor and must have been sufficiently lengthy to trigger

10  examination of the other factors.  *Alexander*, 817 F.3d at 1181.  Delays approaching one year are

11  generally considered presumptively prejudicial.  *Gregory*, 322 F.3d at 1161–62; *United States v.*

12  *Beamon*, 992 F.2d 1009, 1012 (9th Cir. 1993).  A delay of six months is on the borderline for

13  triggering the full *Barker* inquiry.  *United States v. Lam,* 251 F.3d 852, 856 (9th Cir. 2001) (citing

14  *United States v. Simmons*, 536 F.2d 827, 831 (9th Cir. 1976) and *United States v. Valentine*, 783

15  F.2d 1413, 1417 (9th Cir. 1986)).  The nine month delay in this case is sufficiently lengthy to require

16  evaluation of all four factors.

17       As discussed in Findings and Recommendation (ECF No. 235), the Government's decision to

18  file the September 12, 2011 robbery charge in the same case as the November 2014 robberies, and to

19  move for Ms. Bliss's disqualification, caused the postponement of Defendant's trial on the

20  November 2014 robbery charges.  It also extended the time period in which Defendant could

21  otherwise have been brought to trial for the September 2011 robbery.  If the Government had

22  charged that robbery in a separate indictment, another attorney could have been appointed to

23  represent Defendant and he could have been tried on that charge within a reasonable time after the

24  trial on the November 2014 robbery charges.  How much time would have been required to prepare

25  for trial on the September 12, 2011 robbery charge is open to debate.  Defendant Kincade may have

26  still filed the motion to dismiss based on pre-indictment delay.  He has also filed a motion to

27  suppress evidence with respect to the September 2011 robbery charge.  Such motions require time to

28  resolve and often cause some postponement of the trial.  In all probability, Defendant could have

been tried a few months earlier than the date now set for trial.

Defendant invoked his right to a speedy trial in June 2016 when he refused to stipulate to a continuance of the July 12, 2016 trial date on the November 2014 robbery charges.  He did not specifically invoke his speedy trial right with respect to the September 12, 2011 robbery charge.  The subsequent continuances of the trial date, however, were due to the Government's decision to file the second superceding indictment and move for Ms. Bliss's disqualification.  Although Defendant might have mitigated some of the delay by promptly acknowledging that Ms. Bliss could not represent him on the September 2011 robbery and moving for severance, Defendant and his counsel should not be blamed for not reacting fast enough to a situation that the Government should not have created in the first place. The second and third factors therefore weigh in Defendant's favor.

The delay in this case is not long enough to excuse Defendant from proving actual prejudice. *Gregory*, 322 F.3d at 1163.  Actual prejudice resulting from post-indictment delay can consist of (1) additional and oppressive pretrial incarceration; (2) the additional anxiety and concern of the accused; and (3) impairment of the defendant's ability to defend the charge against him.  Impairment of the defense is the most serious form of prejudice. *Barker v. Wingo*, 407 U.S. at 532, 92 S.Ct. at 2193.  As explained above, Defendant has not shown that he has suffered actual prejudice in his ability to defend the September 2011 robbery charge.  He has experienced some prejudice caused by an additional few months of pretrial detention and the anxiety or concern that he may experience while awaiting trial.  While the Court believes that the Government acted unreasonably, the resulting period of delay in bringing Defendant to trial on the September 2011 robbery charge and the prejudice suffered by Defendant are not so severe as to justify the serious penalty of dismissing the indictment as to that charge.

**3.**     **Dismissal Pursuant to Rule 48(b) of the Federal Rules of Criminal Procedure.**

Rule 48(b) of the Federal Rules of Criminal Procedure states that the court may dismiss an indictment, information or complaint if unnecessary delay occurs in (1) presenting a charge to a grand jury; (2) filing an information against a defendant; or (3) bringing a defendant to trial.  The rule protects against both unreasonable pre-indictment and post-indictment delay. *United States v. Hayden*, 860 F.2d 1483, 1485 (9th Cir. 1988).  Rule 48(b) is, however, limited to post-arrest

1   situations.  *Id.* at 1485 (citing *United States v. Marion*, 404 U.S. at 319, 92 S.Ct. at 462–63).  It does

2   not apply to delay that occurs before the defendant is arrested for or charged with the crime.

3       The court may dismiss pursuant to Rule 48(b) whether or not there has been a violation of

4   defendant's Sixth Amendment right.  *United States v. Simmons*, 536 F.2d 827, 833–34 (9th Cir.

5   1976).  Dismissal with prejudice under Rule 48(b) should only be imposed in extreme circumstances

6   and must be exercised with caution and only after the Government has been forewarned that

7   dismissal with prejudice is possible.  *Id.* at 834; *see also United States v. Hutchison*, 22 F.3d 846,

8   850 (9th Cir. 1993).  The caution element requires a finding of prosecutorial misconduct and

9   demonstrable prejudice or substantial evidence of prejudice to the defendant.  *United States v.*

10  *Gilbert*, 813 F.2d 1523, 1531 (9th Cir. 1987) (citing *United States v. Hattrup*, 763 F.2d 376, 377–78

11  (9th Cir. 1985)).  In general, dismissal under Rule 48(b) is appropriate only where there is "delay that

12  is 'purposeful and oppressive.'" *United States v. Sears, Roebuck and Co., Inc.*, 877 F.2d 734, 739

13  (9th Cir. 1989).  In *United States v. Towill*, 548 F.2d 1363, 1370 (9th Cir. 1977), the court upheld

14  dismissal based on a finding of government harassment.  In *United States v. Talbot*, 51 F.3d 183, 187

15  (9th Cir. 1995), the court reversed dismissal on the grounds that the government filed an additional

16  charge "too close" to trial.

17      Forewarning may include a court rule that provides that an indictment may be dismissed with

18  prejudice if a defendant is not brought to trial within a specified time period.  *Simmons*, 536 F.2d at

19  836–37.  Forewarning could also involve a situation in which the judge specifically warns the

20  government that no further continuance will be granted and that the indictment may be dismissed

21  with prejudice if the government is not ready to proceed on the date set for trial.

22      Defendant was arrested on October 4, 2011 for charges relating to the domestic violence

23  incident with S.P.  *Reply (ECF No. 212)*.  Although a petition to revoke Defendant's supervised

24  release was filed on October 20, 2011, based in part on the September 2011 robbery, Defendant's

25  initial appearance on the petition did not occur until May 10, 2012 at which time the Government

26  informed the court that it was not seeking his detention because it had determined that he did not

27  commit the robbery.  The petition was amended on May 11, 2012 to eliminate the robbery as a

28  ground for revocation.  *Addendum to Petition (ECF No. 73)*, Case No. 2:05-cr-320-LDG-PAL.

13

1    Because Defendant was not arrested for the September 12, 2011 robbery prior to the filing of the

2    second superceding indictment on June 29, 2016, Rule 48(b) does not apply the pre-indictment

3    period.

4         Even if Rule 48(b) applied to the pre-indictment period, dismissal based on that delay is not

5    appropriate under the caution requirement.  The record does not support a finding of prosecutorial

6    misconduct during the pre-indictment period.  The Government apparently decided not to pursue the

7    robbery charge after S.P. retracted her statements regarding Defendant's involvement in the robbery.

8    The Government did not learn until May 2016 that S.P. would now stand by her October 4, 2011

9    statements.  Although it is possible that the Government might have acquired this information if it

10    had contacted S.P. prior to May 2016, it is not clear that it would have.  There is also no evidence

11    that Defendant's defense has been prejudiced by the pre-indictment delay.

12         The Government was also not forewarned of the possibility of dismissal.  Defendant relies

13    *United States v. Henry*, 815 F.Supp. 325, 327 (D. Ariz. 1993) in which the court found that the

14    government was negligent in not filing charges against the defendant until three and one-half years

15    after the alleged offense.  Based on this, the court also stated that  "the government is charged with

16    constructive knowledge of the Court's statutory authority pursuant to Rule 48(b) and that this is

17    warning enough."  In *United States v. Gomez*, 2014 WL 1089288, *5 (N.D.Cal. March 14, 2014), the

18    court noted that the Ninth Circuit declined to adopt the *Henry* rationale in the absence of

19    prosecutorial neglect.  *Id.* (citing *United States v. Talbot*, 51 F.2d at 187, n. 2).  Because the

20    Government had a legitimate reason for not charging Defendant with the robbery prior to May 16,

21    2016, the *Henry* rationale does not apply to this case.

22         As to the post-indictment period, the Government caused some unnecessary post-indictment

23    delay.  The length of that delay is not more than a few months with respect to trial of the September

24    12, 2011 robbery charge and Defendant has not demonstrated that his ability to defend against that

25    charge has been impaired.  The additional period of pretrial detention or anxiety or concern of

26    defendant, does not justify dismissal of the indictment under Rule 48(b).

27        **4.**      **Dismissal Pursuant to the Court's Supervisory Powers**.

28         Defendant argues that the Court should dismiss the indictment pursuant to its inherent

1   supervisory powers.  In *United States v. Struckman*, 611 F.3d 560, 574 (9th Cir. 2010), the court

2   stated that even if the government's conduct does not rise to the level of a due process violation, the

3   court may nonetheless dismiss the indictment under its supervisory powers.  An indictment may be

4   dismissed in order to (1) implement a remedy for the violation of a recognized statutory or

5   constitutional right; (2) to preserve judicial integrity by ensuring that a conviction rests on

6   appropriate considerations validly before the jury; and (3) to deter future illegal conduct.  The district

7   court in *United States v. Khan*, 2014 WL 1330681, *2 (E.D. Cal. April 1, 2014) states that the

8   court's inherent powers are not limited to these areas and it has the inherent authority to act "'to

9   effectuate, as far possible, the speedy and orderly administration of justice' and 'to ensure

10  fundamental fairness.'" *Id.* (quoting *United States v. Richter*, 488 F.2d 170, 173–74 (9th Cir. 1973)

11  and *United States v. W.R. Grace*, 526 F.3d 499, 509 (9th Cir. 2008)).  Nevertheless, "[a] court may

12  dismiss an indictment under its supervisory powers only when the defendant suffers substantial

13  prejudice and where no lesser remedy is available." *Id.* (quoting *United States v. Chapman*, 524 F.3d

14  1073, 1087 (9th Cir. 2008)).  In this case, the Court has concluded that Defendant has not suffered

15  substantial prejudice that would justify dismissal under either the Sixth Amendment speedy trial

16  clause or Rule 48(b).  For the same reasons, dismissal under the Court's supervisory powers is not

17  warranted.

18                                    **CONCLUSION**

19          Defendant has not shown that he suffered actual, non-speculative prejudice from the pre-

20  indictment delay in this case.  The record also does not support a finding that the Government was

21  negligent or guilty of any misconduct with respect to the period of pre-indictment delay.

22  Defendant's Fifth Amendment right to due process of law has therefore not been violated.  Although

23  the Government caused some unnecessary post-indictment delay with respect to trial of the

24  September 12, 2011 robbery charge, Defendant's ability to defend against that charge has not be

25  impaired by the delay.  The prejudice that Defendant has experienced in the form of additional

26  pretrial detention or anxiety and concern caused by the pending charges is not so substantial as to

27  . . .

28  . . .

15

justify dismissal under the Sixth Amendment, Rule 48(b) or the Court's inherent supervisory powers. Accordingly,

### **RECOMMENDATION**

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Dismiss Second Superceding Indictment (ECF No. 169) be **denied**.

DATED this 29th day of December, 2016.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge